FILED
OCT 19 2012
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. AND ROCKWELL AUTOMATION TECHNOLOGIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>KONTRON MODULAR COMPUTERS,<br><br>Defendant. | Case No. 12cv566-WQH (WMc)<br><br>**ORDER: (1) DENYING PLAINTIFF'S MOTION TO ENFORCE OUT OF DISTRICT SUBPOENA AND (2) DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>(ECF Nos. 1, 24) |

**INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff, Rockwell Automation ("Rockwell"), sued the WAGO Corporation ("WAGO") for patent infringement of industrial programmable controllers in the United States District Court for the Western District of Wisconsin. Rockwell alleges WAGO markets and sells infringing controllers and Kontron Modular is responsible for the design, development and manufacture of the accused products. However, Rockwell has not sued Kontron Modular in Wisconsin, California, or any other jurisdiction.

Rockwell and WAGO are engaged in discovery. To supplement its discovery efforts in Wisconsin, Rockwell seeks to compel Kontron Modular, a German company, to produce documents pursuant to a Subpoena Duces Tecum from the United States District Court for the

Southern District of California and purportedly served on Kontron Modular by delivery to a receptionist at the offices of Kontron America, Inc. ("Kontron America") in Poway, California. The subpoena seeks documents from Kontron Modular relating to Rockwell's claims against WAGO even though Rockwell successfully moved the district court in Wisconsin to compel WAGO to produce the same documents it now seeks here.

Presently before the Court is Rockwell's original motion to enforce the subpoena, Kontron Modular's opposition and Rockwell's reply. The Court heard oral argument and granted Kontron Modular's motion for leave to file a sur-reply. Also, the Court permitted Rockwell to file a sur-sur reply, but stated no further briefing would be accepted. After Rockwell filed its sur-sur reply, Kontron Modular filed supplemental briefing to address what it considered new arguments and evidence impermissibly presented in Rockwell's sur-sur reply. The Court struck Kontron Modular's supplemental briefing because Kontron Modular did not seek leave to file the supplemental briefing. However, the Court permitted Kontron Modular to file a motion to strike portions of the sur-sur reply. Accordingly, Kontron Modular filed a motion to strike to which Rockwell filed an opposition.

In addition to filings supplementing the original motion, counsel for Kontron Modular filed a motion to quash the subpoena purportedly served by Rockwell on Thomas Sparrvik. Kontron Modular alleges Rockwell served Mr. Sparrvik with a subpoena to testify at a deposition. Also, Kontron Modular filed an objection to Rockwell's four additional subpoenas – two directed at Kontron Modular and two directed at Kontron AG (one each for documents, one each for documents and testimony) – purportedly served on Thomas Sparrvik. Rockwell responded with an opposition to Kontron Modular's motion to quash and a cross-motion to enforce the additional subpoenas. Kontron Modular filed a reply/opposition to Rockwell's opposition and cross-motion.

In sum, the following motions are now pending before the Court:

1) Rockwell's Motion to Enforce Subpoena Duces Tecum (ECF No. 1)

2) Kontron Modular's Motion to Quash Subpoena by Thomas Sparrvik (ECF No. 17)

3) Rockwell's Cross-Motion to Enforce Subpoena Duces Tecum and Ad Testificandum (ECF No. 21) (additional subpoenas)

    4) Kontron Modular's Motion to Strike Portions of Rockwell's Sur-Sur Reply (ECF No. 24)
    5) Rockwells Motion to File Documents Under Seal (ECF No. 31)

**KONTRON MODULAR'S MOTION TO STRIKE**

As an initial matter, the Court denies Kontron Modular's motion to strike portions of Rockwell's sur-reply for the following reasons. *First*, the Court permitted both sides to submit supplemental briefing to address areas of concern for the Court. *Second*, the Court does not find the argument or evidence presented in Rockwell's sur-reply prejudicial because: (1) the new arguments raised are sufficiently related to the arguments initially presented, (2) the evidence presented was mostly Kontron's own material, (3) Kontron Modular had sufficient opportunity to present its arguments. Accordingly, the Court denies Kontron Modular's motion to strike.

**ROCKWELL'S MOTION TO ENFORCE THE SUBPOENA DUCES TECUM**

*Rockwell's Argument*[1]

Rockwell moves the Court to compel Kontron Modular to produce "its data sheets, user manuals, technical specification documentation, electronic information (correspondence, Word documents, PowerPoints, etc.) and sales numbers for the IPCs it manufactures and supplies to WAGO." (Rockwell's Motion; ECF No. 1, pg. 3). Rockwell contends the documents are relevant and discoverable, its subpoena is lawful and reasonable, and it has been prejudiced by Kontron Modular's refusal to comply with its requests.

Rockwell argues the documents it seeks are relevant because the documents include technical data and specifications of the allegedly infringing products. *Id.* at 5. Rockwell suggests the non-technical data, i.e., e-mail correspondence, may include evidence or lead to evidence of "Kontron's[2] motivation to develop the infringing product" which "is an important factor in determining the knowledge and willfulness of the parties involved." *Id.* Also, Rockwell contends

---

[1] This section includes all of Rockwell's arguments as those arguments developed over the course of the briefing. However, the Court has omitted the parties' arguments regarding production in New York, New York, liability under German law, and compliance with the Hague Convention because those issues are superfluous to the Court's analysis.

[2] The Court will presume plaintiff's use of "Kontron" refers to Kontron Modular.

sales data regarding the allegedly infringing products is relevant to Rockwell's damages calculation. *Id.* at 5-6.

Additionally, Rockwell contends it properly served the subpoena under California law because it served Kontron Modular's "general manager." *Id.* at 7. Rockwell cites *Khachatryan v. Toyota Motor Sale, U.S., Inc.*, 578 F. Supp. 2d 1224 (C.D. Cal. 2008), among other cases, to support its argument that it properly served the subpoena on Kontron Modular via service on Kontron America, Kontron Modular's U.S. subsidiary. (Rockwell's Motion; ECF No. 1, pg. 7). Following Kontron Modular's opposition and assertion that Kontron America *is not* Kontron Modular's subsidiary, Rockwell argued service was still proper because Kontron Modular and Kontron America are sister entities, there is serious ambiguity regarding the manner and capacity of their relationship, and they should not be permitted to avoid personal jurisdiction through such a "transparent corporate shield." (Rockwell's Reply; ECF No. 8, pg. 5-6) (*citing Sigros v. Walt Disney World Co.*, 129 F. Supp 2d 56, 64 (D. Mass. 2001)).

Rockwell also addresses the issue of the Court's jurisdiction over Kontron Modular in its reply to Kontron Modular's opposition. (Rockwell Reply; ECF No. 8). Rockwell contends Kontron Modular purposely avails itself of the California marketplace because it engineers the computers and/or components of the accused products and ships these products to consumers or vendors in California. Rockwell relies on WAGO's subjective belief that it purchased the accused products from Kontron America, or at least, from Kontron Modular located in California, and the fact that "Kontron AG [the alleged parent company of all Kontrons] does not delineate which products are being sold by which Kontron entity and instead provides contact information for both Kontron Modular in Germany and Kontron America in California in connection with the same product." *Id.* at 4. Rockwell contends Kontron Modular designed products it knew Kontron AG would distribute through its "sophisticated distribution channel," presumably including its U.S. subsidiary, Kontron America, located in California. Rockwell concludes Kontron Modular could therefore reasonably expect to be brought into court in California.

Alternatively, assuming this Court does not find it has personal jurisdiction of Kontron

Modular, Rockwell requests the Court permit Rockwell to take limited jurisdictional discovery of Kontron Modular.

Finally, Rockwell contends Kontron Modular's refusal to comply with its discovery requests is prejudicial because it may inhibit Rockwell's ability to use the documents to oppose summary judgment in the underlying Wisconsin federal action.

***Kontron Modular's Opposition***

Kontron Modular argues Rockwell improperly served the subpoena because Rockwell failed to effect valid service under California law. Kontron Modular's argument is twofold. *First*, Rockwell failed to serve Kontron Modular's "general manager" when it delivered the subpoena to Kontron America because Kontron America, *the entity*, is not Kontron Modular's "general manager" within the meaning of California Code of Civil Procedure ("CCP") section 416.10(b). *Second*, Rockwell's delivery of the subpoena to Ms. Prvulov, a Human Resources Assistant for *Kontron America*, does not constitute service of the subpoena on a "general manager" of *Kontron Modular*. Regarding the several cases cited by Rockwell which impute service on a foreign entity via service on its domestic counterpart ("general manager"), Kontron Modular notes the distinction between the close foreign-domestic business relationships in the cited cases, and the distant (or non-existent) foreign-domestic business relationship in the instant case. Kontron Modular contends tenuous relations between the Kontrons provide tenuous grounds for imputing proper service. Further attenuated, Kontron Modular notes, is the relationship between Kontron America's Human Resources Assistant, the individual that received the service, and Kontron Modular.

Even if the Court finds Kontron America is Kontron Modular's "general manager," Kontron Modular argues, this Court still lacks personal jurisdiction over Kontron Modular because Rockwell failed to demonstrate sufficient minimum contacts. Kontron Modular argues Rockwell failed to establish the necessary minimum contacts between Kontron Modular and the forum because (1) Kontron Modular does not conduct any business in California, (2) Kontron America is not the alter ego or general agent of Kontron Modular, and (3) Kontron America's activities in the forum did not give rise to Rockwell's claims in the underlying action.

Kontron Modular further contends Kontron America could not possibly comply with the production request because Kontron America does not have custody or control over the documents requested. Moreover, Kontron Modular alleges the documents sought include highly valuable and sensitive trade secret information.

Kontron Modular points out the proprietary information sought by Rockwell in the instant motion is the very same information Rockwell sought, and is in the process of securing, from WAGO in the underlying Wisconsin federal action. Kontron Modular contends this Court should deny Rockwell's motion because Rockwell will obtain the same information from WAGO – a party in the underlying action and under that court's jurisdiction – as opposed to Kontron Modular – a non-party to either action and not under either court's jurisdiction. Kontron Modular concludes such production would create an undue hardship and burden on Kontron Modular.

Finally, Kontron Modular contends Rockwell's request for limited jurisdictional discovery is unwarranted and unsupported by relevant legal authority.

**DISCUSSION**

It is undisputed that Rockwell seeks relevant information. The issues here are whether Rockwell seeks that information from the proper entity, via the proper vehicle, following the proper protocols and within the proper jurisdiction. After reviewing the moving papers and arguments of counsel, the Court denies Rockwell's motion to enforce the subpoena.

### *Rockwell Failed to Follow the Protocols for Proper Service*[3]

California Code of Civil Procedure Section 416.10, made applicable to the parties by Federal Rule of Civil Procedure 4(h)(1)(A), requires a party, like Rockwell here, to serve either an agent designated for service or an appropriate employee or entity, such as a president, chief executive officer, vice president, secretary or assistant secretary, treasurer or assistant treasurer, controller or chief financial officer, general manager, or any employee authorized by the corporation to receive service of process. *See Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F.Supp.2d 1226 (C.D. Cal. 2008) (noting an organization can be a general manager). General

---

[3] The Court notes Kontron Modular challenges jurisdiction and service which are similar but distinct concepts and which therefore require similar but distinct analysis.

managers must be of sufficient character and rank, or have sufficient duties and responsibilities, as to put them on par with the other service-appropriate executives listed in the statute. *See General Motors Corp. v. Superior Court*, 15 Cal.App.3d 81, 86 (1971). Thus, general managers may be domestic distributors, salesmen or advertisers, or customer service liaisons of foreign manufacturers – even if the foreign-domestic relationship is "casual" or "non-exclusive" – so long as the domestic entity provides the foreign entity an open channel for the regular flow of business from the foreign entity into California. *See Khachatryan*, 578 F.Supp.2d at 1226; *Halo Electronics, Inc. v. Bel Fuse Inc.*, 2010 WL 2605195 (N.D. Cal. June 28, 2010); *Gray v. Mazda Motor of America, Inc.*, 560 F.Supp.2d 928 (C.D. Cal. 2008); *Cosper v. Smith & Wesson Arms Co.*, 53 Cal.2d 77 (1959).

In determining whether service was delivered to the proper individual, the Ninth Circuit favors the service-recipient's practical function within the organization over the rigid formality of the service-recipient's rank. *See Direct Mail Specialists Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Indeed, the purpose of service is to provide "the means by which a court asserts jurisdiction over the person" and to give the defendant *adequate notice* of the pendency of an action. *Troll Busters LLC, v. Roche Diagnostics GmbH*, 2011 WL 3859721, *8-9 (S.D. Cal. Aug. 31, 2011) (concluding service upon domestic sister-subsidiary's *general counsel* was reasonably calculated to give notice to its foreign sister-subsidiary).

The Court finds the facts and analysis in *Troll Busters* informative. In *Troll Busters*, German defendant Roche Diagnostics GmbH ("RDG") challenged Troll Busters' attempted service on RDG by serving the general counsel of its domestic sister-subsidiary, Roche Diagnostics Corporation ("RDC"). *Id.* at *8-10. Like Kontron Modular and Kontron America, RDG and RDC are sister-subsidiary companies respectively located in Germany and the United States and acting under the umbrella of a holding company (Roche Holding AG). *Id.* Furthermore, like Kontron Modular and Kontron America, the Roche companies do business under the same name and share the same website. *Id.* at *9. Based on these facts, the *Troll Busters'* court found a "close relationship between RDC and RDG" and described RDC as "RDG's domestic operating arm." *Id.* at *9. The court then found Troll Busters' service on

RDC's general counsel was reasonably calculated to give notice to RDG because of the close relationship between the subsidiaries and because RDC's general counsel: (1) would know what to do with the summons and complaint directed at RDG, (2) gave notice to RDG, and (3) stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service. *Id.*

Similarly, the Court here finds ample evidence to conclude proper service upon Kontron America can impute service upon Kontron Modular. Indeed, the following evidence establishes Kontron Modular and Kontron America share a closer relationship than RDG and RDC. Rockwell attached (as an exhibit) what appears to be a print-out of a press release on Kontron's website.[4] (ECF No. 8-2, Exh. 8). The article details Kontron's announcement during the Embedded Systems Conference in Silicon Valley, California regarding the latest model in its ThinkIO-Duo fan-less PC range. The article only refers to Kontron generally, except in one instance in which it directs readers to contact its "sales team to learn more about this product family and about product customization by contacting us at: Kontron America Sales Phone: 888-294-4558." The article also describes Kontron as a designer and manufacturer of technology products in "a variety of markets" with engineering and manufacturing facilities throughout Europe, North America, and Asia-Pacific that "work together with streamlined global sales and support services to help customers reduce their time-to-market and gain a competitive advantage." The article further directs readers to contact Richard Pugnier or David Pursely for questions regarding the article itself or for technical or product information. Both men appear to have U.S. telephone numbers and e-mail addresses. *Id.* Importantly, Kontron (generally) *describes itself* – in a *California* press-release and providing what appears to be a *San Diego* based area code (858) – as having *"streamlined"* global sales and support services connecting its engineering and manufacturing products with consumers in order to provide its consumers with a competitive advantage. If the reader (most likely a consumer) is interested, the page directs the reader to contact Kontron America Sales located in Poway, California. Not surprisingly, WAGO,

---

[4] Kontron America, Kontron Modular, and all other Kontron-affiliated entities appear to utilize one website: www.kontron.com

a Kontron Modular customer, believes Kontron Modular is located in Poway, California. (ECF No. 1-4, Exh. 3 p. 6). Finally, Kontron's website lists Thomas Sparrvik as the Chief Operating Officer and Vice Chairman of Kontron AG, a member of Kontron's Managing Board of Directors, and the Chief Executive Officer of Kontron America and Asia-Pacific. (ECF No. 15-2, pg. 18). Thomas Sparrvik resides in San Diego, California. (ECF No. 15-1, pg. 3).

Thus, Kontron America specifically (and perhaps Kontron generally) opens itself to the U.S. and California marketplace in five notable ways. *First*, Kontron America is physically located in Poway, California. *Second*, consumers with questions regarding sales or product customization are directed to Kontron America. *Third*, consumers seeking product and technical information about any Kontron entity are directed to contact an "Applications Engineer" with a U.S. phone number. *Fourth*, Kontron touts its "streamlined" (read: interconnected) structure for consumers globally. *Fifth*, Thomas Sparrvik (Kontron AG's COO and Kontron America's CEO) resides in San Diego and is responsible for the sales, marketing, production and supply chain for Kontron worldwide.

Despite this evidence, Kontron Modular argues proper service on Kontron American cannot impute service on Kontron Modular because there is no flow of business between the two entities.[5] Indeed, according to the declaration of Thomas Sabisch, Kontron Modular's Managing Director, Kontron Modular does not "sell, supply or distribute the [accused product] to or through Kontron America, or in the United States or California at all" nor is Kontron Modular "involved in the engineering or development of these products." (Decl. Thomas Sabisch; ECF No. 4-1 p. 4). Kontron Modular concludes this fact distinguishes the instant case from the cases upon which Rockwell relies. Here, unlike *Halo*, *Khachatryan*, *Cosper*, and *Gray*, the factual nexus between the foreign and domestic entities is missing; there is no flow of business.

Kontron Modular's distinction is appealing but not compelling because the dispositive

---

[5] Rockwell did not directly counter Kontron Modular's distinction but instead relied on *Sigros v. Walt Disney World Co.* for the proposition that confusion or ambiguity alone can be sufficient to find an agency relationship. *Sigros v. Walt Disney World Co.*, 129 F.Supp.2d 56 (D. Mass. 2001). However, Rockwell's reliance on *Sigros* in this regard is unavailing because the *Sigros* court contemplated – and relied on – the presence of a *co-defendant* relationship in which one co-defendant purposefully accessed consumers in a foreign state for the benefit of the other co-defendant. *Id.* at 64. These specific facts are not present here.

fact is the *presence of a channel* for the regular flow of business and not the *actual flow* of business. *See Halo Electronics, Inc. v. Bel Fuse Inc.*, 2010 WL 2605195 (N.D. Cal. June 28, 2010) (focusing on the "opportunity for regular contact" between the foreign and domestic entities). Therefore, although Thomas Sabisch's declaration indicates there is no flow of business between Kontron Modular and Kontron America, the overwhelming evidence of interconnectedness between the Kontron entities (mostly from Kontron's own materials) establishes the presence of an existing, available channel for the regular flow of business between the entities.

The distinction between channel and flow is further supported by the underlying principle behind appropriate service of process: to notify a defendant of a pending action. *See Direct Mail Specialists*, 840 F.2d at 688 (noting actual receipt of process by the correct person may be a factor in finding process valid when there are other factors that make process fair); *Cf. Summers v. McClanahan*, 140 Cal. App. 4th 403, 408 (2006) (noting actual notice is not a substitute for proper service despite California's liberal, practical approach to service of process issues). Here, Kontron Modular did in fact receive notice of the action.

Accordingly, the Court need not resolve the apparent conflict between what the Kontron website and press release purport and what Mr. Sabisch declared because the bottom line is sufficiently clear: Kontron America *can* facilitate the sale and customization of Kontron Modular products, thus Kontron America *can* facilitate service of process on Kontron Modular as its general manager. In this regard, the Court finds service on Kontron Modular through Kontron America is reasonably calculated to provide notice of the service of process on Kontron Modular. *See Troll Busters*, 2011 WL 3859721, *8-9.

Nevertheless, Rockwell's actual attempt to serve Kontron Modular failed in two ways. *First*, Rockwell's service upon Ms. Prvulov – a receptionist at *Kontron America* – fails to satisfy the requirements for service upon *Kontron Modular* because Ms. Prvulov is not a "general manager" of Kontron Modular. *Second*, service upon Ms. Prvulov fails because Ms. Prvulov is not an appropriate officer or agent of Kontron America.

Here, Ms. Prvulov – a Human Resources Assistant temporarily filling-in as a receptionist

during the lunch hour – is not a general manager of Kontron Modular. Not only is Ms. Prvulov employed in a *non-executive, non-officer* capacity of a *different* company headquartered in a *different* country, she had never heard of Kontron Modular before receiving the service and was only temporarily covering the reception desk. (*See* Decl. of Tanja Prvulov; ECF No. 4-12 p. 2.) Not surprisingly, Ms. Prvulov almost immediately "became concerned that [she] made a mistake for signing for the documents" and "asked if [the process server] was sure these documents were for [Kontron America]." *Id*. Based on these facts, the Court concludes Ms. Prvulov is *not* a general manager for Kontron Modular under California law.

Additionally, Rockwell's service would have failed even if Rockwell had intended to serve Kontron America. Kontron Modular did not specifically address this scenario and Rockwell contends the argument is waived. However, the Court finds a purported service on Kontron America similarly defective. Service upon Ms. Prvulov is not sufficient because she is not an agent or officer of Kontron America, nor did Kontron America authorize Ms. Prvulov to receive service on its behalf. Rather, Kontron America's *designated* agent for service of process is the CT Corporation System located in Los Angeles, California. Because Kontron America's designated agent is presumably accessible, and because Rockwell fails to demonstrate any evidence to support the contention that Ms. Prvulov "stands in" the position of an officer "as to render [service] fair, reasonable and just . . . ," this Court further concludes service on Ms. Prvulov was invalid as to both Kontron America and Kontron Modular. *See Direct Mail*, 840 F.2d at 688; *Troll Busters*, 2011 WL 3859721 at *8-9 (concluding service upon domestic sister-subsidiary's *general counsel* reasonably calculated to give notice to its foreign sister-subsidiary).

Accordingly, the Court finds Rockwell's service of the subpoena invalid.

***This Court Does Not Have Jurisdiction Over Kontron Modular***

The Court cannot compel Kontron Modular to respond to Rockwell's subpoena unless the Court has jurisdiction over Kontron Modular. The Court's ruling on the validity of service, though related, does not pre-determine the jurisdictional question. *See Halo*, 2010 WL 2605195 at *2, *6 (finding facts sufficient for valid service of foreign company through service on its domestic counter-part *yet* finding the same facts insufficient for exercising jurisdiction over a

foreign company).

Rockwell and Kontron Modular agree on the applicable standard for determining personal jurisdiction: Rockwell must demonstrate either (a) the Court has *general jurisdiction* over Kontron Modular because Kontron Modular has "continuous and systematic general business contacts in the forum" and should expect to be haled into court here; *or*, (b) the Court has *specific jurisdiction* over Kontron Modular because Kontron Modular (1) purposefully directs or avails itself of conducting business in the forum and (2) the claim arises out of Kontron Modular's forum-related activities. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-02 (9th Cir.2004) If Rockwell satisfies the specific jurisdiction prongs, the burden shifts to Kontron Modular to "present a compelling case" that the Court's exercise of jurisdiction would be unreasonable. *See Id.* at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

To support its argument for general jurisdiction, Rockwell relies on *Cosper* and *Sigros*. Rockwell argues Kontron America is more intimately connected to Kontron Modular than the *Cosper* defendant's non-exclusive domestic salesman was connected to its co-defendant, a Massachusetts gun manufacturer. *See Cosper*, 53 Cal. 2d at 82-83 (concluding the exercise of jurisdiction over a foreign manufacturer proper and not a denial of due process because its sales representative regularly did business in California). Rockwell attempts to buttress its reliance on *Cosper* with the proposition from *Sigros* that a court should not permit a foreign entity to hide behind the nebulous nature of its relationship with its domestic counterpart in order to avoid personal jurisdiction. *See Sigros*, 129 F. Supp. 2d at 64.

However, the alleged nebulous nature of Kontron America and Kontron Modular's relationship is not the focus of the Court's jurisdictional inquiry. A close inspection of the *Cosper* defendants' relationship reveals two important jurisdictional facts not present here: (1) a California consumer (the *Cosper* plaintiff) and (2) evidence of regularly conducted business. Here, unlike *Cosper*, there is no evidence that Kontron Modular or Kontron America ever sold to a California consumer, or injured (infringed the product of) a California resident. Rather it appears Rockwell purchased the accused product from WAGO, an entity not affiliated with any

Kontron entity. Kontron Modular's only connection is that it allegedly engineered and manufactured the accused product in Germany, then sold it to WAGO. Rockwell contends this sale was facilitated by Kontron America on behalf of Kontron Modular in California. Rockwell bases this contention on WAGO's belief that Kontron America is Kontron Modular. However, this assumption is not evidence. Further, if it was, it would not be enough to demonstrate that Kontron Modular *regularly conducts business in California*. Accordingly, the Court declines to exercise *general jurisdiction* over Kontron Modular.

Likewise, there is no evidence to support a finding of *specific jurisdiction*. Kontron Modular contends Kontron America has nothing to do with the sale, design, engineering, or manufacture of the accused products; thus, there are no jurisdictionally-relevant ties between Kontron Modular and California. Rockwell argues Kontron Modular ships the accused products to California to be purchased by WAGO in California. However, Rockwell does not provide any evidence to support its contention. Nor does Rockwell provide significant evidence of a stream of commerce through which Kontron Modular knows, or should know, the accused product reaches California. Indeed, according to the declaration of Thomas Sabisch, Kontron Modular is not even "involved in the engineering or development of these products." (Decl. Thomas Sabisch; ECF No. 4-1 p. 4). Thus, even if Kontron Modular purposefully availed itself of the California marketplace through its relationship with Kontron America, there is no evidence that Rockwell's claims arise out of Kontron Modular's forum-related activities.

Finally, even if Rockwell could establish the necessary minimum contacts for personal jurisdiction, the Court is compelled to find the exercise of personal jurisdiction over Kontron Modular is unreasonable and unfair. *Electronics for Imaging, Inc., v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003). Courts consider the following factors in determining whether the exercise of jurisdiction would be unreasonable: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Id.*

In evaluating these factors, the Court considers the context in which this case arises:

Rockwell, a *non-California* plaintiff, is seeking discovery of information from a *German non-party* (Kontron Modular) to supplement the discovery of the same information it has successfully compelled in a *non-California* forum. Under these circumstances, the Court is not inclined to exercise jurisdiction over a foreign non-party for the sole purpose of enforcing a subpoena which seeks duplicate information already compelled by a Wisconsin district court. The burden is too great and it is unnecessary. In comparison, Rockwell's interest in obtaining relief is minor because it has already obtained relief in Wisconsin federal court, the proper forum. Additionally, this Court has no interest in a Wisconsin district court dispute between two non-Californian entities. Put simply, California has no dog in this fight. Nor is it likely the Wisconsin district court has any interest in a California district court interjecting discovery rulings on matters it has already considered or should rightfully consider.

Thus, the only beneficiary of the exercise of jurisdiction here is Rockwell. Rockwell benefits from access to Kontron Modular's highly proprietary and trade secret information to prosecute its patent infringement action against WAGO. This puts Kontron Modular at a great disadvantage because Rockwell's claims imply that *either* Kontron Modular manufactured a product which violates, *or* has contributed to the violation of, a Rockwell patent. But, as a *non-party*, Kontron Modular does not have the full panoply of protection a *party* would rightfully enjoy in opposing a patent infringement action or related discovery. For example, Kontron Modular does not get the benefit of a *Markman* hearing, discovery, or expert reports. As a result, Kontron Modular is unable to adequately test or challenge the validity of Rockwell's contentions. Nor can Kontron Modular protect its own intellectual property from inappropriate discovery. Likewise, Kontron Mondular cannot appropriately raise the affirmative defenses of invalidity or prior art even though Rockwell accuses Kontron Modular of violating (or contributing to the violation of) Rockwell's patents and other intellectual property. In short, the discovery Rockwell seeks in this Court is unfair. Therefore, the burden on Kontron Modular to produce its intellectual property is too great to be justified in this context and will not be adequately protected by a well-crafted protective order.

The same reasoning applies to Rockwell's request for jurisdictional discovery. This is not

the typical case in which a plaintiff is seeking discovery to establish forum jurisdiction over a *party* to the action in response to that party's Fed. R. Civ. P. 12(b)(2) motion to dismiss. Rockwell has not provided any case-law to support its contention that jurisdictional discovery is warranted on the facts present here. Nor can Rockwell demonstrate it will be prejudiced by the Court's denial of its request for jurisdictional discovery because (1) it has no claims against Kontron Modular at risk of dismissal and (2) the discovery it seeks can be, and should be, adjudicated before the Wisconsin federal court, which also satisfies (a) the interstate judicial interest in obtaining the most efficient resolution of controversies *and* (b) the two jurisdictions' shared interest in furthering fundamental social policies, as, for example, the efficient use of limited judicial resources.

### *Kontron Modular Is Not Entitled to Attorneys' Fees*

Kontron moves for an award of attorney's fees under Fed. R. Civ. P. 37(a)(5)(B). However, the Court finds Rockwell was "substantially justified" in moving to enforce this subpoena because Rockwell's jurisdiction and service arguments, though reasoned and well-intentioned, simply lacked the factual support necessary for this Court to rule in its favor. *See* Fed. R. Civ. P. 37(a)(5)(B).

### CONCLUSION

For all of the foregoing reasons, Rockwell's motion to enforce the subpoena is DENIED.

**IT IS SO ORDERED.**

DATED: October 19, 2012

*[signature]*

Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court